IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

FRED L. COLLINS,

                              Plaintiff,

        vs.                                        Civil Action No.
                                                   1:05-CV-0201 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

─────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

MARGOLIUS LAW FIRM          PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414

FOR DEFENDANT

HON. GLENN T. SUDDABY        WILLIAM H. PEASE, ESQ.
United States Attorney for the     Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278           SANDRA M .GROSSFELD, ESQ.
                             Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiff Fred L. Collins, who suffers from both borderline intellectual functioning and the lingering effects of a right shoulder condition for which he has sought only minimal treatment over the years, was found in March of 1994 to be disabled as a result of those conditions, and thus entitled to receive Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff's SSI benefits were later terminated, however, based upon a finding that his conditions had medically improved, to a point where he was no longer disabled.  Plaintiff has now commenced this proceeding, requesting judicial review of that decision and the resulting termination of his benefits.

Having reviewed the record in light of plaintiff's arguments, which are only briefly outlined in his memorandum, I find the Commissioner's determination resulted from the application of proper legal principles, and that the agency's findings of medical improvement, and that he is no longer disabled, are supported by substantial evidence in the record. Accordingly, I order the entry of judgment on the pleadings affirming the Commissioner's determination, and dismissing plaintiff's complaint.

-2-

I.      BACKGROUND

Plaintiff was born on August 25, 1957; at the time of the hearing in this matter, Collins was forty-six years old.  Administrative Transcript at pp. 247, 382.[1]  Collins is six foot two and one-half inches in height, and weighs two hundred twenty pounds.  AT 247  Plaintiff is a high school graduate, having taken special education courses while in school.  *Id.*

Collins is divorced, and has seven children who ranged in ages from four to twenty-six years old at the time of the hearing in this matter.  AT 248-49.  Plaintiff lives in a house with his twenty-one year old son and a four year old daughter, having been awarded custody of the daughter shortly before the time of his hearing.  AT 250.

Prior to 1992, plaintiff was employed as an automobile painter.  AT 155, 159, 257.  Plaintiff stopped working in that job, however, apparently as a result of a shoulder injury sustained in or about April of 1992.[2,3]  AT

---

[1]     Portions of the administrative transcript (Dkt. No. 6) as well as two supplemental administrative transcripts (Dkt. Nos. 12, 16), comprised of the proceedings and evidence before the agency and filed by the Commissioner with his answer in this action, will hereinafter be cited as "AT ___."

[2]     The record reveals that in or about 1990, plaintiff "sustained a comminuted fracture of the right humerus necessitating open reduction and internal fixation."  AT 277; *see also* AT 155.

[3]     As will be seen, plaintiff has performed some work since 1992, including in 1999 when he worked for approximately six months as an independent contractor, delivering mattresses.  AT 243, 257.

155, 159.  Plaintiff presented at a hospital emergency room in April of 1992, with complaints of shoulder pain.  AT 277.  X-rays taken at or about that time revealed the existence of boney erosion about the head of the humerus.  *Id.*

In October of 1992 plaintiff again sought medical treatment after having been involved in a bar altercation.  AT 277.  Plaintiff was hospitalized on that occasion and treated for fracture of his mandible and left subcondylar neck fracture.  *Id.*  While during that visit plaintiff also complained of shoulder pain, there was apparently no examination or treatment administered for that condition at that time.  *Id.*  Some months later, however, it was noted that x-rays revealed a recurrent fracture of the humeral head and non-union persistent with current evidence of avascular necrosis.  *Id.*

Since 1992, plaintiff has sought only sporadic treatment for his shoulder and other physical conditions.  Plaintiff was seen in November of 1993 complaining, among other things, of shoulder pain, and at that time was given Anaprox for the pain and told to return for treatment as needed. AT 130.  The medical records in evidence reveal a significant hiatus, which included several failures to keep appointments, *see*, *e.g.*, AT 130-

31, from that point until in 1995, when plaintiff was seen for injuries suffered when slipping on a wet floor.  AT 130.  Notes of that visit, during which Collins apparently did not mention his shoulder pain, reveal that x-rays taken of his knee were negative, and that while there was some medial joint line tenderness and medial patellofemoral tenderness noted, with some crepitus through range of motion, there was no apparent effusion.  AT 130.  As a result of that examination, physiotherapy was recommended, and plaintiff was provided with a prescription for Naproysn. *Id.*

In 1996, plaintiff suffered a fractured right index finger while wrestling with his daughter.  AT 131.  Reports of the treatment of the injury to that finger, however, revealed its healing without significant complications.  *Id.*

On August 29, 1996, while receiving treatment for his finger, plaintiff noted that was experiencing some loss of flexion in his shoulder, but that "otherwise it seem[ed] to be pretty good."  AT 131.  Plaintiff was provided with a prescription for Tylenol with Codeine in light of what was characterized as "periodic aching in his shoulder."  *Id.*

Plaintiff was consultatively examined on October 2, 2001 by Amelita

Balagtas, M.D.  AT 155-57.   The results of Dr. Balagtas' examination were largely unremarkable, revealing conditions which would impose only modest restrictions in plaintiff's ability to lift, carry and reach using his right upper extremity.  AT 157.  Dr. Balagtas diagnosed Collins as suffering from status post fracture, right shoulder with right shoulder pain, noting his prognosis as "stable".  AT 156-57.  X-rays taken on that same day in connection with that evaluation revealed a grade I separation of the acromioclavicular joint, with "[a]vascular necrosis (AVN) at the right humeral head with joint space irregulatory at the gleno-humeral joint".  AT 158.

Plaintiff presented at the emergency room at Columbia Memorial Hospital, located in Hudson, New York, on May 6, 2004, again complaining of right shoulder pain.  AT 388-90.  At that time plaintiff was diagnosed as suffering from arthritis, and was referred to orthopedist Stewart Kaufman, M.D. for follow-up treatment.  AT 389.  There is no indication, however, that plaintiff ever followed through with treatment with Dr. Kaufman.

Plaintiff's medical records were reviewed by Dr. Carol A. Wakeley, a state agency medical consultant, on October 15, 2001.  AT 171-72.  In her

report, Dr. Wakely noted that plaintiff had failed to follow through with appointments and filling prescriptions, and did not appear to have undertaken to treat his pain complaints significantly through medication. *Id.* Based upon reports revealing increased mobility in plaintiff's shoulder, Dr. Wakeley concluded that Collins had in fact experienced improved mobility and a decrease in pain, and that medical improvement related to performing work functions had occurred. AT 172. Based upon her review of the relevant medical records, Dr. Wakeley concluded that plaintiff was capable of sitting for six hours, and standing/walking for six hours; and could lift up to a maximum of twenty pounds occasionally and ten pounds frequently, though with an additional limitation that he not frequently reach overhead with his right arm.[4] AT 172*; see also* AT 169.

Dr. Wakeley's conclusions are somewhat buttressed by a 1996 residual functional capacity ("RFC") assessment prepared by consultant Dr. James Alpert, also based upon plaintiff's medical records. AT 134-41. In that assessment, Dr. Alpert concluded that at the time plaintiff was able to carry up to twenty pounds occasionally, but less than ten pounds frequently; could stand and/or walk, and sit, for about six hours in an eight

---

[4]     In her report, Dr. Wakeley noted that the plaintiff himself has acknowledged his ability to lift up to twenty pounds. AT 172.

hour work day; and was limited in his ability to climb and to reach overhead.  AT 135-37.

In addition to his physical condition, plaintiff also suffers from a somewhat limiting mental impairment.  Although he has never been hospitalized for psychiatric reasons or received mental health services, it is uncontraverted that plaintiff suffers from borderline intellectual functioning.  *See*, *e.g.*, AT 168.  In a consultative psychiatric evaluation prepared by Dr. Seth Rigberg in November of 2001, plaintiff was assigned a verbal scale intelligence ("IQ") of 77 and a performance scale IQ of 70, with a full scale IQ listing of 72.  AT 166-67.  As a result of his condition, plaintiff experiences difficulties in reading and writing.  AT 164.  According to Dr. Rigberg, plaintiff is able to care for his personal needs, and retains the ability to follow and understand simple directions and instructions, and to perform simple tasks under supervision.  AT 167.  Dr. Rigberg also opined that plaintiff can maintain attention and concentration, as well as make appropriate decisions which are within his cognitive capabilities, and has the capacity to learn to perform complex tasks independently and to relate adequately with others.  AT 167.  Based upon his evaluation, Dr. Rigberg recommended that plaintiff participate in a vocational training

program to assist him in his quest for employment.[5]  AT 168.  Dr.

Rigberg's findings are for the most part consistent with a psychiatric

review technique form completed in November of 2001 by agency

consultant Abdul Hamweed, M.D.  *See* AT 173-89.

During the hearing plaintiff testified that he is able to perform

housework, cook, and do laundry, with the assistance of his son; can walk

for at least one mile; and is capable of driving for between forty-five

minutes and one hour before stopping to stretch.  AT 250-52, 262.

Plaintiff is also capable of meeting his personal needs, AT 256, and for a

six month period during 1999 was able to work delivering mattresses,

reporting that he was required to end that endeavor when his truck broke

down, AT 243, 257.

II.      PROCEDURAL HISTORY

    A.      Proceedings Before The Agency

On March 4, 1994, based upon an application filed by the plaintiff on

September 10, 1992 for Supplemental Security Income ("SSI") benefits,

*see* 382-85, ALJ Hastings Morse issued a decision finding plaintiff to be

disabled, and thus entitled to receive SSI benefits.  AT 276-79.  That

---

[5]      According to Dr. Rigberg, plaintiff expressed to him an interest in working
and the hope that he would be able to find a job.  AT 167-68.

decision was based upon ALJ Morse's determination that plaintiff's shoulder condition and mental impairment, in combination, limited him to performing less than a full range of sedentary work, and that as a thirty-six year old, functionally illiterate individual with unskilled work experience, a finding of disability was required utilizing the medical-vocational guidelines (the "grid") set forth in the governing agency regulations, 20 C.F.R. Pt. 404, Subpt. P. App. 2, as a framework.  AT 278-79.

Of its own initiative, the agency undertook a disability review of the plaintiff's circumstances in October of 1996.  That review was based in part upon a consultative evaluation conducted in November of 1992, revealing that plaintiff was capable of comprehending and following simple instructions and that with the exception of lacking twenty degrees of flexion and experiencing some tenderness in the region of his right shoulder, he was otherwise in good condition.  AT 24-25.  As a result of its re-evaluation, the agency determined that medical improvement had occurred and plaintiff was at that point capable of engaging in substantial gainful employment.  *Id.*

While plaintiff's SSI benefits were scheduled to terminate, by virtue of the finding of medical impairment, they were inadvertently continued.

AT 28.  In June of 2001, the agency again reviewed plaintiff's circumstances, once more concluding that he was no longer disabled, as of December, 2000, and consequently ordered that his SSI benefits end, effective after February of 2001.  *Id.*  That determination was based largely upon plaintiff's failure to cooperate with the agency's reevaluation process, including his failure to respond to written notices and telephone contacts.[6]  AT 106-14.  After being advised of the anticipated termination of his benefits, however, plaintiff – who was not then under treatment from any medical source of his own – relented and agreed to cooperate, submitting to both a consultative physical examination by Dr. Balgatas in October of 2001, and the psychiatric evaluation conducted by Dr. Rigberg in November of 2001.  AT 33-34.  As a result of a hearing conducted before a disability hearing officer on or about June 4, 2002, at which plaintiff failed to appear, in July of 2002, a finding of medical improvement was made, and it was determined that plaintiff no longer suffers from a disability.  AT 31-40.

At plaintiff's request, a hearing was conducted on May 7, 2004

---

[6]      Plaintiff's counsel has speculated that Collins' failure to cooperate with the agency may have been the product of a prior drug and alcohol substance abuse condition.  *See* AT 242.

before ALJ Joseph F. Gibbons to address the agency's decision to terminate plaintiff's benefits.[7]   *See* AT 237-72.   Following that hearing ALJ Gibbons issued a decision, dated June 22, 2004, in which, after conducting a *de novo* review of the matter, he concluded that plaintiff had medically improved and was no longer disabled.  AT 14-21.  In his decision, ALJ Gibbons began by recounting the basis for the earlier, 1994 determination of disability, which was the result of a finding that plaintiff was limited by his physical condition to performing sedentary work and that his mental condition substantially eroded the occupational base of available sedentary work which he was capable of performing.  AT 17. After analyzing the scant medical evidence developed since that determination, including the available physical and psychological consultative reports, ALJ Gibbons concluded that plaintiff continues to suffer from severe musculoskeletal problems as well as borderline intellectual functioning, but that those conditions do not meet or equal any of the listed, presumptively disabling conditions set forth in the agency's

---

[7]     Plaintiff's administrative hearing was initially scheduled to be held on October 14, 2003.  *See* AT 269.  When plaintiff appeared on that date without counsel, however, the hearing was adjourned to allow him to make arrangements for legal representation.  AT 269-72.

regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[8]  AT 19.

Proceeding to step four of the five part, sequential analysis, ALJ Gibbons concluded that while plaintiff retains the RFC to perform light work which does not require more than occasional overhead reaching with his right arm, he is unable to return to his prior work as a construction laborer and auto body worker given the lifting, carrying and reaching requirements associated with those positions.  AT 19.

Noting that there was medical improvement, particularly as evidenced by plaintiff's having engaged in six months of relatively strenuous gainful employment in 1999, and that the record did not disclose any reason why he could not perform simple, entry level light work, at step five of the analysis ALJ Gibbons applied his RFC finding to the grid and found that a determination of no disability was justified.[9]  AT

---

[8]     ALJ Gibbons' decision is somewhat equivocal as to whether he in fact found plaintiff's mental condition to be sufficiently severe to meet the requirements of step two of the five part, sequential test for determining disability.  *Compare* AT 19 ("Although the claimant has been diagnosed with borderline intellectual functioning he is independent in self-care and is able to drive a vehicle and he has maintained employment in the past.  There is no evidence of any other significant psychiatric problem and according to the record he has been 'clean and sober since February of 2002.' (Exhibit 13 F.)) *with* AT 20 (finding "[t]he medical evidence establishes that the claimant currently has borderline intellectual functioning and residuals of the right shoulder injury").

[9]     Plaintiff does not challenge the propriety of ALJ's resort to the grids for reference as a framework to determine disability.

20.

The ALJ's decision became a final determination of the agency

when, on January 7, 2005, the Social Security Administration Appeals

Council denied plaintiff's request for review.  AT 3-5.

### B.   This Action

Plaintiff commenced this action on February 14, 2005.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing of an answer,

accompanied by an administrative transcript of evidence and proceedings

before the agency, on June 6, 2005.[10]  Dkt. Nos. 5, 6.  With the filing of

plaintiff's brief on June 20, 2005, Dkt. No. 7, and that on behalf of the

Commissioner on November 14, 2005, Dkt. No. 15, the matter is now ripe

for determination, and has been referred to me on consent of the parties,

for a final determination pursuant to 28 U.S.C. § 636(c), *see* Dkt. No. 18.[11]

---

[10]    Supplemental administrative transcripts were thereafter filed by the Commissioner on September 21, 2005, Dkt. No. 12, and on December 8, 2005, Dkt. No. 16.

[11]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp. 2d at 148 (citing *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the

-16-

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health &*

*Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *Parker*, 626 F.2d at 235;

*Simmons v. United States R.R. Ret.Bd.*, 982 F.2d 49, 57 (2d Cir. 1992);

*Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir.

1983).

     B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

 In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

        The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

-18-

meets or equals an impairment listed in Appendix 1 of the regulations. *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f),

416.920(f).

     The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Standard For Termination Of Benefits

In a case such as this, where a finding of disability has resulted in the granting of benefits under the Act, the Commissioner is statutorily charged with a duty to engage in a continuing, periodic review of the claimant's condition.  42 U.S.C. § 421(i); *see also* 42 U.S.C. § 425(a).  If, based upon that review, the Commissioner determines that the disabling condition has subsided, does not exist, or is no longer disabling, a termination of benefits may be ordered.  42 U.S.C. § 423(f).  In making a review to determine whether cessation of benefits is warranted, the Commissioner must examine the claimant's "current" condition – a term ordinarily requiring assessment of the plaintiff's condition at the time of the hearing.[12]  *Difford v. Sec'y of Health & Human Servs.*, 910 F.2d 1316, 1320 (6th Cir. 1990).

Generally speaking, termination of benefits is appropriate under section 423(f) and the corresponding regulations when 1) there has been medical improvement related to the claimant's ability to work; 2) the

---

[12]    As an exception to this general rule, in cases where disability benefits under Title II have been terminated and the claimant's insured status ended prior to the hearing date, the critical date is the last date of insured status.  *Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 212-13 (6th Cir. 1995), *cert. denied sub nom*, *Henley v. Chater*, 516 U.S. 1081, 116 S. Ct. 792 (1996).

claimant has benefitted from advances in medical or vocational technology related to the ability to work, regardless of the lack of medical improvement; 3) the claimant has undergone vocational therapy related to ability to work; 4) based on new or improved diagnostic or evaluative techniques it is demonstrated that claimant's condition was not as disabling as previously regarded; or 5) substantial evidence shows that an earlier finding of disability was erroneous.[13]  42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(d), 416.994(b)(3).

     D.    <u>The Evidence In This Case</u>

     1.    <u>Medical Improvement</u>

While plaintiff's borderline intellectual functioning is undeniably a relevant factor, and there does not appear to have been appreciable change in plaintiff's mental condition over time, the right shoulder injury was clearly of paramount concern in both the original finding of disability and the later determination of medical improvement.  There is a dearth of medical evidence in the record regarding treatment of plaintiff's physical

---

    [13]    The regulations also provide that if the claimant is engaged in substantial gainful activity – a factor which under the five step test would ordinarily result in a finding of no disability – termination of benefits is warranted.  20 C.F.R. § 404.1594(d); *see also* 42 U.S.C. § 423(f).  This can include part-time employment with earning levels sufficient to trigger the rebuttable presumption of substantial gainful activity, permitting termination of benefits even without a showing of medical improvement.  *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 292-94 (9th Cir. 1992).

shoulder condition since 1994.  Indeed, as plaintiff acknowledged during the hearing, he does not have a physician who regularly treats that condition.  AT 253.  The record also reveals that plaintiff takes little or no medication for his shoulder condition, and that despite that impairment he was able to engage in the delivery of mattresses on a regular basis for six months during 1999.  AT 243, 255-56, 257.

The ALJ's finding of medical improvement is supported by consideration of the medical evidence in the record, including the consultative report of Carol A. Wakeley, M.D., a state agency consultant. In her report, based upon a review of plaintiff's records, Dr. Wakeley noted that plaintiff was not at the time taking any pain medication, and by his admission could lift up to twenty-five pounds with his right arm.  AT 171-72.  Dr. Wakeley reported improvement in plaintiff's mobility, based upon his medical records, as well as a decrease in pain.  AT 172.  Dr. Wakeley's findings, which establish medical improvement in plaintiff's shoulder condition, thus provide an adequate basis for the ALJ's conclusion that medical improvement did in fact occur.

### 2.    Plaintiff's RFC

The lynchpin of ALJ Gibbons' determination is his RFC finding that

plaintiff is capable of performing light work, with additional limitations

relating to overhead reaching.[14]  Plaintiff challenges both the mental and

physical components of that determination.

A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 404.1545(a).  An RFC determination is informed by consideration

of a claimant's physical abilities, mental abilities, symptomology, including

pain, and other limitations which could interfere with work activities on a

regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore

---

[14]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

The physical components of the ALJ's RFC light work findings are well-supported.  The various elements of that finding are supported by RFC assessments in the record, *see*, *e.g.*, AT 134-41, 171-72, and are not contradicted by any conflicting evidence in the record including from plaintiff's treating sources.  The ALJ's light work determination is also

consistent with defendant's admission that for six months in 1999 he was able to engage in mattress delivery work.

It is true, as plaintiff notes, that since 1994 he has experienced other physical conditions, including the fracture of a right index finger in 1996, and another finger fracture in 1999, as well as an injury to his right knee as a result of an automobile accident in November of 2002.  The few reports of treatment following those occasions, however, reflect little or no residual effects of those injuries, and certainly none that would preclude the performance of light work.  *See*, *e.g.,* AT 198-203, 399.  An orthopedic consultation in January of 2003, to address his knee problem, by way of example, led to only relatively modest findings and a recommendation that plaintiff utilize a hinged knee brace and anti-inflammatories.  AT 399.  The report of an orthopedic consultant, James M. Schneider, M.D., regarding the knee condition concludes by noting that plaintiff "is only experiencing minor symptoms now, and I believe these should resolve over time".  *Id.* And, although plaintiff did return to Dr. Schneider in February, 2003, complaining of continued pain in his right knee, at which time he was given an injection of Marcaine and Kenalog, as well as a prescription for Ibuprofen 600 TID, and told to follow-up in six weeks if his pain persisted,

AT 393, there is no indication of any further visits to that orthopedist for his knee problems.

The record also reflects that plaintiff underwent a chiropractic examination of his knee injury on May 2, 2003.  AT 394-97.  In a report of that examination, it was noted that at the time of his automobile accident plaintiff was not employed, but "was looking for work".  AT 395.  The chiropractor, Christopher Donoghue, D.C., concluded by stating while the plaintiff was not working "he could return to work in a light duty job, which would not require long periods of standing.  He should be able to do this type of work."  AT 397.

The mental element of the ALJ's RFC finding is also well-supported.  While plaintiff clearly suffers from some mental limitations, he has never sought or obtained any significant psychiatric or psychological treatment.  AT 164.  The indications in the record are that notwithstanding his borderline intellectual functioning, plaintiff is able to take care of his personal needs, as well as to interact with family and friends.  AT 167; *see also* AT 251, 332.  Based upon his psychiatric examination of the plaintiff, consulting psychologist Dr. Seth Rigberg concluded that Collins is capable of following and understanding simple directions and instructions and

performing simple tasks under supervision, and can maintain attention and concentration as well as make appropriate decisions within his cognitive capabilities.  AT 167.  Dr. Rigberg also opined that plaintiff is able to perform complex tasks independently and can relate adequately to others. *Id.*  Dr. Rigberg's findings, which included a recommendation that Collins participate in vocational training to assist him in acquiring and maintaining employment, AT 168, were confirmed upon review by a state agency psychological consultant, Dr. Abdul Hammad, on November 21, 2001, *see* AT 189.

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure at each level of administrative review.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The Commissioner first records the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in the record.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If a mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent.  *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2).  In doing so the Commissioner rates the

-27-

degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, the latter of which is incompatible with the ability to do work-like functions – analyzing four specific factors, including 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

The Commissioner must then determine the severity of the mental impairment.  *Id.* §§ 404.1520a(d), 416.920a(d).  Where the Commissioner rates the degree of limitation in the first three functional areas as "none" or "mild", and "none" in the fourth functional area, the Commissioner will generally conclude that claimant's impairment is not severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If, on the other hand, the Commissioner finds the claimant's medical impairment to be severe, he must determine whether it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  In the event the impairment is deemed severe, but does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC, considering whether he or she is limited in the ability to carry out

-28-

certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

An ALJ is no longer required under the governing regulations to append a Psychiatric Review Technique Form ("PRTF") to his or her decision when addressing a case which implicates the presence of a psychological impairment.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL 1173632, at *50758.  The ALJ is, however, nonetheless subject to the requirement that an analysis of whether a mental impairment exists be incorporated or in some way embodied within his or her decision when evidence of such an impairment is presented.  20 C.F.R. §§ 404.1520a.

To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).  In his

decision, ALJ Gibbons considered the relatively scant evidence in the record regarding plaintiff's mental condition, and appropriately concluded that he is able to operate in an employment setting, at least to the extent of performing entry-level light work.  AT 17-20.  This finding is well supported by substantial evidence in the record, including plaintiff's apparent ability in 1999 to work for an extended period as a truckdriver delivering mattresses.

### 3.    Plaintiff's Subjective Pain Complaints

In support of his challenge to the ALJ's determination, plaintiff also maintains that it overlooks his complaints of lingering pain.  An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would

be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[15]  *Barnett*, 13 F. Supp. 2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

---

[15]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree of discomfort as a result of his shoulder condition.  The fact that he suffers from discomfort, however, does not automatically qualify him as disabled,

since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance while plaintiff alleges to suffer from disabling pain, there is no objective evidence, including medical science or findings, to show the existence of a condition which could reasonably be expected to produce the symptomology alleged.  Under these circumstances plaintiff's pain complaints do not serve as an impediment to a finding of medical improvement and no disability.  *See Aponte*, 728 F.2d at 591; *see also Martone*, 13 F. Supp. 2d at 151.  It should be noted, moreover, that plaintiff's complaints of limiting pain are inconsistent with many of his daily activities including the ability to drive a truck, his 1999 work activities, and his statement that he is able to play basketball.  *See, e.g.*, AT 155, 167, 243, 252, 257, 332.

IV.   <u>SUMMARY AND ORDER</u>

The Commissioner's determination that the plaintiff in this case has experienced medical improvement since 1994, when he was determined to be disabled, and is now capable of performing entry level light work, notwithstanding his mental and physical limitations, is not only supported by substantial evidence in the record, but in fact the evidence, without

-33-

contradiction, is overwhelming in supporting this conclusion.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of medical improvement and no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.


Dated:      March 26, 2007
            Syracuse, NY




_____
David E. Peebles
U.S. Magistrate Judge